Good morning, Your Honors, may it please the Court, my name is Scott Atherton, I represent the appellant Fresh Results. To get to the heart of this appeal, I respectfully submit it presents three main questions. The first is, did the trial court erroneously find that ASF's witnesses were inaccessible in the United States? The second main question this appeal presents is, whether the trial court relied on that erroneous finding to overcome the strong presumption that applies to Fresh Results as a U.S.-based company. And the third is whether that error that went to the heart of this order spilled into other evaluation of the factors, including the public factor of the U.S.'s . . . Well, it seemed to me the big problem here was that the district court relied on an equiposed standard that is really not good law, and as a result, did not discuss any public factor other than choice of law. And although it said in kind of a single line that nevertheless the public factors weigh in favor of dismissal, I can't really tell to what extent the equiposed standard really affected or made its analysis defective. The whole thing about the witnesses, the South American growers that the district court said, well, they're not parties to the suit, that doesn't matter if they're witnesses, whether they're parties or not. Oh, and then the enforcement of the judgment issue, well, there are no treaties for enforcement of judgments. That seemed to be an error. It seems to me that the district court might very well, with a correct analysis, come to the very same conclusion that it did here, which is dismissal for no convenience in a way that would be utterly invulnerable to attack on appeal. But the problems I've just outlined, to me at least, suggest that we're going to have to send it back. Well, thank you. If you have further questions for me, I'd be happy to answer, otherwise I can reserve that time for rebuttal. Thank you. Thank you. Mr. Garofalo, it was not helpful for us that you weren't here at 8 this morning. We didn't know whether you were here or not, or whether you were going to be here, and it's really important for the clerk that you be here when we ask, so that we know well beforehand that we've got the parties we need to have and that we can get our business done. I apologize to the court. I had a taxi cab driver who was unfamiliar with the courthouse.  I am unfamiliar with the area. This is the old, don't know where you're to the courthouse excuse. Unfortunately, yes, Your Honors. Not the most, not the best for a lawyer. And again, I apologize. May it please the court, I just do want to focus briefly on the Equipose issue that the court identified and the public interest . . . We borrowed that from the D.C. Circuit. It's been in dicta of our court, but never in any holding, and it's . . . the D.C. Circuit has since disavowed it in the light of Piper Aircraft, and it just seems to me we've got to make clear that's just not law, that's not good law. That may be, Your Honor, but at the time the district court made this ruling, there were at least two cases from this circuit that did in fact apply that standard, both the Wilson . . . Well, they've mentioned it. They've never really . . . it's never been part of the holding. In the Aldana case, one of the cases in which it was mentioned, the court, like the district court here, then went on to address the standards, the public interest standards it deemed relevant. And the language in Piper Aircraft . . . What I can't tell though from this order is whether the district court really made a determination of what all the relevant public factors are, because it only really mentions one. Well, the public factors recognized in Piper are administrative difficulties. That's the first factor, and I think if you read the court's opinion, it is clear that the court did recognize difficulties. Difficulties in compelling witnesses, in getting admissible evidence, in having the material evidence which . . . Those sound like private interest factors to me. Well, it sort of bleeds over into the administration though, because it makes it difficult for the court to administer the action. Assuming that evidence from third-party witnesses or third-party sources in the Netherlands is available through a letters rogatory, the Hague Convention, or any other method that might be available, that places a burden, an administrative burden on the court to administer those methods and to obtain the evidence. It also causes incredible delay in getting a case to trial. This is a case that is so unusual in that literally all of the evidence material to the fraud and breach of contract claims resides in the Netherlands. It is so overwhelmingly clear. The interesting issue here is that it's hard to understand how a plaintiff can prove its fraud claims in a court, a district court in Florida. I would not be surprised if under a correct analysis, the district court came to the same conclusion. My concern though is that there are at least three legal errors here that seem to me have to be corrected. What about the evidence and testimony and witnesses not subject to party control located in South America who were apparently willing to come to Florida but not willing to go to the Netherlands? That speaks to the issue Judge Pryor raised earlier. It doesn't matter if they're in parties. In fact, that makes it harder to get their proof if they are non-parties. That evidence seems to me to be characterizable as key. How does that factor in? Well, the South American witnesses, whoever they are and they have the surveyors identified as the surveyor who sort of the mystery shopper went to the Netherlands and did this incognito survey. We're not sure exactly where the surveyor is located. However, there is no evidence, admissible evidence in the record that the surveyor or any of the South American growers or their representatives have agreed to come to Florida to testify. There is a statement in Mr. Crawford's declaration without any substantiation. There is no declaration or affidavit from the surveyor or any other South American grower. Is there anything to contradict that in the record? There's nothing. The record here is, shall we say, lean other than the forum non-convenience motion. The court stayed discovery while the motion was pending. So we really do have a bare record other than the record on the motion. As to the South American growers themselves, it is not clear who it is whose agreed or would be willing to come to the United States. But their evidence is peripheral, as I believe the district judge noted. The only evidence the growers might have is the condition of the berries, either when they left the fields in South America or perhaps when they were crated and shipped. We don't know what happened. It seems all right to me, you know. I don't disagree with that. I think that's a reasonable view. But the problem is that's not the ground on which the district court, you know, dismissed it. The district court said, well, they're not parties. That's just an erroneous, you know, conclusion, right? The fact that they're not parties is not the point, is it? The fact that they're not parties is not the point on the forum non-convenience motion. I think the court looked at this, looked at the evidence where the material evidence was and concluded that it was so overwhelmingly, in fact, exclusively available in the Netherlands as to the condition of... That may be where you ultimately end up. I'm just concerned about these kinds of fundamental legal errors in the analysis. Like the reciprocity of enforcement of foreign judgments, you know, the absence of a treaty. Well, the United States doesn't have a treaty with any country about that. That's just... That was an improper consideration, wasn't it? Well, it may have been the court took it from Mr. Molinar's declaration. Mr. Molinar is an expert in Dutch law and that was his conclusion. He did not opine on whether such treaties existed. In my experience, the only way to get discovery from foreign countries is through letters rogatory and perhaps the Hague Convention. Here, again, we have... The site is in the Netherlands. The evidence as to what the reasonable value of the berries was is in the Netherlands. All the evidence on whether there was some fraud is in the Netherlands. The argument you seem to be making, though, really is almost like a de novo determination for us to determine that it should be a dismissal for forum non-convenience. I don't think that we're in the posture to be able to do that. The court mentioned three issues that it found with the judgment and I may have missed one, but I have two. Was there a third? The reciprocity of enforcement of judgments, the fact that the growers are not parties and the equipoise standard. To me, all three of those are legal errors. Given the fact that we're dealing with this freewheeling, multi-factor balancing analysis, Judge Pryor's point is that there's just no way for us to know, sitting here, a step removed from the process, how those errors did or didn't affect the analysis. As Judge Pryor says, it may well be that on remand, you make all of the arguments that you're making to us today and you prevail. I think there's an excellent chance of that. I would suggest to the court, if that is the case, in the interest of administrative economy, when you look at the administrative standards, again, we have administrative difficulties, the burden on a jury, those kind of standards, other than the choice of law, which the judge did address. That's a really great thing to be arguing to the district court. Does the court have any further questions? We do not. Do you have a warm enough coat to go to the Netherlands? Unfortunately or fortunately, I don't think it will be me in the Netherlands, but thank you, Your Honors. Thank you. Mr. Atherton. Thank you, Your Honor. I just wanted to briefly touch on this EQUIPO standard for a moment in the event that you're writing about it. I know that Your Honors and your clerks are fully capable of researching it, but something I found in preparing for this oral argument, in isolating the district court cases that cited to the EQUIPO standard, even after the SME case, in which this court noted there was a clarification based on the Young case, there's been at least approximately 50 district court decisions on Westlaw that cited to the EQUIPO standard, including a 2015 case. What you're saying is, if we write to that, what we need to write is, be very clear, that's not good law. Yes, but there's also something I want to call to the panel's attention to the extent it might not have already come forward. We did not raise this EQUIPO's issue. Who cares? Okay. Thank you. Thank you. It's taken. Thank you. Court is adjourned for the week. Thank you. Thank you.